UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Ronald Woods,
    Plaintiff,

v.

Unum Life Ins. Co. of America, et al.,
    Defendants.

No. 3:09cv809(SRU)

RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Ronald Woods brings this claim against Unum Life Insurance Co. ("Unum") and his former employer, Thomson, Inc., challenging Unum's denial of long-term disability benefits. Woods alleges that Unum's denial of benefits was unlawful; that Unum failed to provide a reasonable claims procedure; and that Unum failed to provide Woods with a complete copy of the summary plan description. Unum has filed a motion for summary judgment on the administrative record (doc. # 23) and Woods has filed a cross-motion for summary judgment (doc. # 25). Such a proceeding is akin to a bench trial "on the papers." *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124-25 (2d Cir. 2003). Accordingly, my findings of fact and conclusions of law are set forth below.[1] Fed. R. Civ. P. 52(a).

**I.    Standard of Review**

A benefit determination is a fiduciary act, and generally courts must review *de novo* a denial of plan benefits unless the plan provides to the contrary. *See McCauley v. Fist Unum Life Insurance Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (applying *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ("*Glenn*")). The terms of the long-term disability policy grant Unum discretionary authority to determine a claimant's eligibility for benefits making a deferential standard of review appropriate. *See McCauley,* 551 F.3d at 132; AR at 251, 280. "Under the

---

[1] Unless otherwise indicated, the facts are drawn from the Administrative Record ("AR").

deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious." *McCauley*, 551 F.3d at 132. Decisions are arbitrary and capricious when they are rendered without reason, unsupported by substantial evidence or erroneous as a matter of law. *See id.; Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley*, 551 F.3d at 132. "Nevertheless, where the administrator . . . interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Id.* at 133. After *Glenn*, a plan where the administrator both evaluates and pays benefits claims creates a conflict of interest that the court must consider and weigh as a factor in determining whether there was an abuse of discretion, but this does not make *de novo* review appropriate. *Id.*; *see also Glenn,* 554 U.S. at 111-12. Neither party disputes that the deferential standard applies.

## II. Background

On May 5, 2009, Woods initiated suit against Unum and his former employer, Thomson, Inc., in Connecticut Superior Court. Unum timely removed on May 19, 2009. Woods's complaint (doc. # 1) alleges that Unum wrongly denied his application for long-term disability coverage in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut Unfair Insurance Practices Act ("CUIPA"), Employee Retirement Income Security Act ("ERISA"), New York Ins. Law § 3234(a)(2) and Conn. Gen. Stat. § 38a-476(b)(1). Woods was a participant in an employee benefit plan issued by Unum and administered by Thomson that provided for long-term disability ("LTD") coverage. The terms of the LTD coverage are set

2

forth in policy # 582002 001 (the "policy" or "plan").[2] AR at 240-73 (titled "Group Insurance Policy Non-Participating"). The policy is an ERISA plan. AR at 274. Woods began working for Thomson on January 4, 2006, and became eligible for coverage under the plan on March 6, 2006 for long-term care coverage as set forth in the policy. AR at 5; Compl. at ¶6.

The policy provides that a claimant is disabled when Unum determines that he is limited in the performance of the material and substantial duties of his regular occupation as a result of sickness or injury. To be eligible to receive benefits, a claimant must be continuously disabled through his elimination period. AR at 244. The policy also states that Unum does not cover any disabilities caused by, contributed to, or resulting from a claimant's pre-existing condition. AR262. Under the policy, a participant has a pre-existing condition if he "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to [the] effective date of coverage; and the disability begins in the first 12 months after [the] effective date of coverage." AR at 262.

Woods has multiple sclerosis ("MS") and received treatment for the condition as early as September 2005. Woods also sought treatment for the condition in December 2005, January 2006, and March 2006. AR at 346, 345, and 323.

On October 1, 2006, Woods fell while working and injured his chest. AR at 338. Initially he was out of work until November 13, 2006 and then limited to light duty until November 28, 2006. *Id.* On November 28, 2006, Woods's physician stated that Woods's medical leave should be extended. AR at 335. On December 27, 2006, Woods's physician

---

[2] The LTD policy was issued in Indiana and provides that Indiana is the governing jurisdiction.

observed that Woods's MS was worsening and therefore Woods should consider applying for disability. AR at 213. Woods then decided to seek disability benefits because of his MS. On January 10, 2007, Woods made a claim for short-term disability ("STD") benefits under a different policy administered by First Unum (Policy # 592832). First Unum, a separate and distinct entity from defendant Unum, approved coverage and found that Woods had become disabled on November 28, 2006 and qualified for benefits beginning December 5, 2006 (after a seven-day expiration period.) Woods subsequently received 26 weeks of STD pay. Once the STD benefits were exhausted, First Unum forwarded Woods's file to Unum for consideration of LTD benefits.

Unum adopted First Unum's date of disability as November 28, 2006 and determined Woods's coverage date as March 6, 2006. After a review of Woods's file and medical history, Unum informed Woods by letter dated July 2, 2007 that his claim for LTD was denied because the claim arose out of Woods's diagnosis of MS, a pre-existing condition. AR at 406-09. In its letter of determination, Unum noted that Woods had been treated by Dr. Amelto on 12/13/2005 for, *inter alia*, MS and that the condition caused, contributed, or resulted in the condition for which he seeks disability coverage. *Id.* at 407. Because that treatment occurred during the three months' look-back period and had reoccurred within twelve months of the policy's effective date, Unum denied coverage under the pre-existing condition exclusion. Unum also noted that the treatment for MS, specifically the prescriptions Provigil, Lexapro, and Lisinopril were prescribed during the three-month look-back period. *Id.* Accordingly, Unum found that the condition underlying the claim for long-term disability was a pre-existing condition. *Id.*

The letter of denial informed Woods that he must submit a written appeal of Unum's

4

determination within 180 days of the date Woods received the letter; that the administrative appeal process "must be completed before you begin any legal action regarding your claim;" and failure to do so would render the claim "final." *Id.* at 407-08. Woods did not initially appeal the determination. On April 30, 2008, Woods, through counsel, sent Unum a letter seeking review of the determination. AR at 428. Unum denied the request and sent the claim file and claim manual to Woods's counsel. AR at 447. Woods's counsel repeated the request for a hearing and Unum continued to deny the request. Woods then initiated this action.

**III.    Discussion**

          A.    <u>Unum's Motion for Summary Judgment on the Administrative Record</u>

Unum moves for summary judgment on all claims in the complaint. It argues that ERISA preempts Woods's CUTPA and CUIPA claims, that the ERISA claim is barred for failure to exhaust administrative remedies, and, even if Woods had exhausted his administrative remedies, his claim is barred because he has a preexisting condition.

      *1. CUTPA and CUIPA*

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). ERISA's expansive pre-emption provisions "are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks omitted). "Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted;" *id*. at 209 (citing *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54-56 (1987)), "the ERISA civil enforcement mechanism [has] such

5

extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id*. (internal citations omitted).

CUTPA claims are preempted by ERISA. *See Glynn v. Bankers Life and Cas. Co.,* 297 F. Supp. 2d. 424 (D. Conn. 2003). While no court has expressly held that CUIPA is preempted by CUTPA, the Supreme Court has made plain that "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 254 (1993)). Moreover, there is no private right of action under CUIPA. *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 118-19 (2d Cir. 2001); *see also DeRossi v. National Loss Mgt.,* 328 F. Supp. 2d 283, 288 (D. Conn. 2004). Because Woods's claims do not fall under ERISA's savings clause, which exempts certain state insurance, banking, or securities laws, generally applicable criminal laws, and domestic relations orders from preemption, Woods's CUTPA and CUIPA claims are preempted.

### 2. *Woods Failed to Exhaust His Administrative Remedies*

There is no dispute that Woods failed to exhaust his administrative remedies. Consequently, Woods argues in his cross-motion for summary judgment that he did not know of the requirement to exhaust his administrative remedies because the notice was inadequate and therefore he is excused from the exhaustion requirement. Doc. # 25 at p. 20. ERISA requires a plan to have a reasonable claims procedure in place, and that plan participants avail themselves of the procedure before turning to litigation. *See* 29 C.F.R. § 2560.503-1 (detailing requirements

of claims procedures, including notification of adverse decisions within 90 days and the availability of a full and fair review of the initial determination). There is a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases, *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993), and absent a "clear and positive showing" that it would be futile for the claimant to pursue his claim through the internal claims process, "that remedy must be exhausted prior to the institution of litigation." *Jones v. Unum Life Ins. Co. of Am.,* 223 F.3d 130, 140 (2d Cir. 2000). Whether the claimant exhausted his administrative remedies under ERISA is a question of law, and where a claimant fails to appeal a denial of benefits within the prescribed time limit, the court will generally not reach the merits of his claim. *See Burke v. Kodak Retirement Income Plan,* 336 F.3d 103, 107 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 511 (2d Cir. 2002)). Accordingly, I address the exhaustion issue first because it is dispositive of the entire matter.

### i. Woods Had Notice of the Administrative Appeal Requirement

Woods maintains that he was not provided with adequate notice of his right to appeal because the letter of denial was ambiguous and did not comply with the requirements of ERISA Section 503. Woods's arguments fail.

Section 503(2) of ERISA sets forth the general requirement that the plan afford any participant whose claim for benefits has been denied a reasonable opportunity for a full and fair review. A written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect a claim, including the time limits applicable to administrative review. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. A notice that fails to substantially comply

with these requirements does not trigger a time bar contained within the plan. *Burke,* 336 F.3d at 107-08. In *Burke* the court held that Kodak's notice was inadequate because it did not explicitly say that the claimant had 90 days to appeal and, although the letter directed the claimant to the plan's handbook, the language in the handbook was "opaque" and "grossly uninformative."[3]

> Here, the letter notified Woods that:
>
> [I]f you disagree with our determination and want to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 180 days of the date you receive this letter.

AR at 407. Unum's letter then set forth in detail where to appeal, what would happen during the appeal process, and that the appeal process must be completed before initiating litigation. The letter also clearly stated in two separate places that Woods had to appeal within 180 days of receiving the letter. AR at 407-08. Woods did not attempt to appeal the determination until 308 days after receiving the letter. To the extent that Woods now claims that he suffered from dementia and was ignorant of the exhaustion requirement, the argument necessarily fails because a claimant ignorant of the exhaustion requirement is not relieved of the requirement. *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 n.2 (2d Cir. 2001). In *Davenport*, the court held that a claimant is "required to exhaust [plan remedies] even if [the claimant] was ignorant of the proper claims procedure." *Id.* at 134 (citing *Meza v. General Battery Corp.,* 908 F.2d 1262, 1280 (5th Cir. 1990) ("Even though [plaintiff] did not receive a copy of the [SPD] as required by

---

[3] The handbook in *Burke* set forth that: "If you remain dissatisfied and wish to appeal, you should, within 90 days of the date the claim was denied (or within 90 days of the date the claim is assumed to be denied), write a letter to the plan administrator asking for a review." *Burke*, 336 F.3d at 109.

[ERISA], he has not shown that the lack of information has harmed him or precluded him from pursuing his administrative remedies *at this point.*")).

Unum's letter explicitly set forth the steps to appeal, and Woods consciously declined to follow those steps. AR at 277, 407. Furthermore, although Woods states in his affidavit that he found the letter confusing and felt it would be futile to contact Unum again, Woods Aff. at ¶¶17-18, Woods's subjective thoughts on futility do not rise to the level of the "clear and positive showing" required to demonstrate that appeal would be futile. *Jones*, 223 F.3d at 140. Indeed, the letter set forth a comprehensive review procedure and notified Woods that an entirely new review panel would handle the appeal.[4] AR at 408.

    ii. <u>Woods was Not Prejudiced by the Failure to Set Forth the Appeal Process in the Plan "Highlights" Document</u>

Woods also contends that he should be excused from the exhaustion requirement because the summary plan description failed to explain his appellate remedies. The argument arises out of Woods's position that the document titled LTD Income Protection Insurance Plan Highlights (doc. # 1, ex. A) ("Highlights") is the controlling summary plan description. Woods claims that because he was never provided with the document identified by Unum as the summary plan description, *see* AR at 274 (the document is titled "ERISA Additional Summary Plan Description Information" hereinafter "Unum SPD"), the Highlights document, which Woods did receive,

---

[4] At oral argument Woods argued that, in light of Woods's allegedly impaired cognitive ability, Unum had a heightened burden to ensure that Woods was aware of and fully appreciated the nature of the appeals procedure. Woods has identified no support, nor have I found any, for the proposition that a benefits administrator is required to tailor its communications to the cognitive abilities of each claimant. Furthermore, even if such an obligation existed, Woods's assessment that an appeal would be futile necessarily defeats his claim that he did not appreciate the requirement to appeal.

must be treated as the controlling plan description for the purposes of his LTD claim.[5] The Highlights sheet fails to set forth the participant's rights, obligations and a reasonable opportunity for review, and therefore, Woods maintains, he is under no obligation to comply with the exhaustion requirement set forth in the Unum SPD.[6]

Woods's argument concerning the Highlights sheet lacks merit. First, informal communications do not establish the terms of a benefit plan. *See Moore v. Metropolitan Life. Ins. Co.,* 856 F.2d 488, 492 (2d Cir. 1988); *see also McMunn v. Pirelli Tire, LLC*, 161 F. Supp. 2d 97, 114 (D. Conn. 2001). Second, to the extent that Woods maintains that he did not receive a copy of the Unum SPD and was therefore entitled to rely exclusively on the terms outlined in the Highlights sheet, he fails in the first instance to demonstrate that Unum did not use efforts reasonably calculated to ensure actual receipt of the material by plan participants. 29 C.F.R. § 2520.104b-1(a). ERISA requires the benefit plan administrator to undertake reasonable efforts to ensure that each plan participant actually receives the plan documents. *Weinreb v. Hospital for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 170 (2d Cir. 2005) (quoting *Leyda v. AlliedSignal, Inc.,* 322 F.3d 199, 208 (2d Cir. 2003)). Section 2520.104b-1(a) of the Code of Federal Regulations provides that "[t]he administrator of an employee benefit plan . . . must disclose certain materials . . . to participants. . . ." Unum states that Thomson distributed its plan

---

[5] The Unum SPD sets forth that "[t]hese provisions, together with your certificate of coverage, constitute the summary plan description. The summary plan description and the policy constitute the Plan. Benefit determinations are controlled exclusively by the policy, your certificate of coverage and the information contained in this document." AR at 274.

[6] The Unum SPD provides that the claimant has "180 days from the receipt of notice of an adverse benefit determination to file an appeal" and that "this administrative appeal process must be completed before you begin any legal action regarding your claim." AR at 277-78.

documents in the following manner: online at www.thomsonbenefits.com; mailings to each eligible participant during open enrollment; emails directing employees to the website; and by request. Distribution through electronic media is proper under 29 C.F.R. § 2520.104b-1(c).

An ERISA claim premised on the failure to provide a SPD requires that the claimant make a showing of likely prejudice. *Weinreb*, 404 F.3d at 171; *see also generally Tocker v. Philip Morris Cos.*, 470 F.3d 481, 489 (2d Cir. 2006). Here Woods cannot claim prejudice. First, it is clear that Woods was aware that a summary plan description for the policy was available. Indeed, Woods states in his affidavit that he sought the document out and visited the website but could not locate the summary plan description, choosing at that point to rely exclusively on the Highlights sheet instead of requesting the document from his employer. Woods Aff. at ¶12. The Highlights sheet also put Woods on notice that a separate, more detailed plan description existed. *See* doc. # 1, ex. A ("This plan highlight is a summary provided to help you understand your insurance coverage from UnumProvident. Details may differ from state to state. Please refer to your complete plan description. If the terms of this plan highlight summary or your certificate differ from your policy, the policy will govern.").

Woods erroneously relies on *Heidgerd v. Olin Corp*, 906 F.2d 903, 908 (2d Cir. 1990), for the premise that, because he did not obtain a copy of the Unum SPD, the Highlights sheet serves as the controlling summary plan description and therefore any inconsistencies must be resolved in favor of the Highlights sheet. *Heidgerd* held only that, where an employer summarizes its benefits plan in a manner that conflicts with the actual plan, the summary controls. *Id.* at 908.

Furthermore, even if Unum failed to provide Woods with a copy of the policy and the Highlights sheet controlled, the claim is still barred for failure to exhaust because Woods cannot demonstrate that he was prejudiced by the failure of the Highlights sheet to outline appeal procedures. *See Tocker*, 470 F.3d at 488. Woods is required to show that he was likely harmed as a result of the failure of the Highlights sheet to explain the exhaustion requirements. *Burke*, 336 F.3d at 113. Even if Woods was not aware of the requirement to exhaust his appellate remedy before filing his claim, there is no dispute that Unum's letter of denial clearly instructed Woods on the necessary steps to appeal the denial of his claim and that his failure to do so would bar his ability to seek further relief, i.e., file an action. AR at 407-08.

In sum, Woods failed to exhaust his administrative remedies and therefore his claims are barred. *See Jones*, 223 F.3d at 140 (holding that administrative remedies must be exhausted before litigation commences in an ERISA case). Accordingly, I need not reach the merits of Woods's remaining arguments. *Burke,* 336 F.3d at 107.

## IV.   Conclusion

For the foregoing reasons, defendants' motion for summary judgment [doc. # 23] is granted and plaintiff's motion for summary judgment [doc. # 25] is denied.

The clerk shall close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 19th day of January 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge